66 F.3d 335
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Stephen NEFSTAD, Petitioner-Appellant,
v.
George BALDWIN, Respondent-Appellee.
 No. 94-35714.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 12, 1995.
Decided Sept. 1, 1995.
 
 1
 Before: GOODWIN and HUG, Circuit Judges, and SCHWARZER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Stephen Nefstad, an Oregon state prisoner, appeals the district court's denial of his 28 U.S.C. Sec. 2254 habeas petition. He claims that (1) the trial court erred in denying his motion for judgment of acquittal because the State failed to establish proper venue and jurisdiction; (2) his due process rights were violated by two separate instances of prosecutorial misconduct; (3) his due process rights were violated by trial court evidentiary rulings; and (4) the trial court erred by not giving his requested jury instructions. We affirm.
 
 I.
 
 4
 Nefstad contends that the trial court erred in denying his motion for judgment of acquittal because the State failed to establish venue and jurisdiction beyond a reasonable doubt. We review the denial of a petition for habeas corpus de novo. Jeffries v. Blodgett, 5 F.3d 1180, 1187 (9th Cir.1993), cert. denied, 114 S.Ct. 1294 (1994). When reviewing to determine whether sufficient evidence existed to support a conviction, we determine if, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). State court determinations on factual issues are presumed correct. 28 U.S.C. Sec. 2254(d).
 
 
 5
 We conclude that the evidence, viewed in a light most favorable to the prosecution, shows that the victim was murdered in Oregon. The prosecution presented the following evidence: The victim met Nefstad and codefendant Reyes Miranda in a bar in Oregon and was last seen leaving the bar with the two defendants. Less than an hour later, a bank surveillance camera photographed Miranda stealing $200 from the victim's account through an automatic teller machine in Oregon. Blood appeared to be on Miranda's shirt. Almost no blood was found at the scene where the body was dumped. Miranda's car, however, was soaked with the victim's blood. A medical examiner testified that the victim's blood was out of his body before it was dumped in a gorge in Vancouver, Washington. The examiner's testimony also established that the victim was stabbed while sitting in the car and would have lost his blood there. The victim sustained stab wounds to his heart and lung that would cause the victim to have died within minutes of receiving those wounds.
 
 
 6
 Furthermore, the court instructed the jury that to find a defendant guilty of aggravated murder, it must find beyond a reasonable doubt "that an act or an element of the offense was committed in Multnomah County, Oregon" and that "either the robbery or the homicide commenced in Oregon." The court similarly instructed the jury for the felony murder charge. It is presumed the jury followed the instructions. United States v. Van Cauwenberghe, 827 F.2d 424, 432 (9th Cir.1987), cert. denied, 484 U.S. 1042 (1988).
 
 
 7
 Both the Oregon Supreme Court and the district court found that sufficient evidence existed to allow the jury to reasonably infer that the murder occurred in Oregon and that the defendants thereafter disposed of the body in Washington. We agree. The district court did not err in determining that the State met its burden of establishing beyond a reasonable doubt that venue and jurisdiction were proper in Oregon.
 
 II.
 
 8
 Nefstad's second contention is that two separate instances of prosecutorial misconduct violated his due process rights. "When prosecutorial conduct is called in question, the issue is whether, considered in the context of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly." United States v. Simtob, 901 F.2d 799, 806 (9th Cir.1990) (citing United States v. Young, 470 U.S. 1, 11 (1985)). "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).
 
 
 9
 Nefstad contends that his due process rights were violated when the court allowed prosecutors to make remarks to potential jurors that could be interpreted as expressing the prosecution's belief that Nefstad would be found guilty. Nefstad likens this situation to one where the prosecutor vouches for the credibility of its witnesses. We conclude that Nefstad's due process rights were not violated.
 
 
 10
 The State sought the death penalty against Nefstad. As such, it was allowed to inquire into the jurors' views on the death penalty and whether those views would prevent or substantially impair the performance of their duties as jurors in accordance with their instructions and their oaths. Wainwright v. Witt, 469 U.S. 412, 424 (1985) (reaffirming standard established in Adams v. Texas, 448 U.S. 38 (1980)). The Oregon Supreme Court properly concluded that the statements were "neither expressions of belief nor improper." It stated:
 
 
 11
 A prosecutor cannot effectively learn the views of a juror who thinks that the inquiries into the death penalty merely are academic, and who does not understand that there truly exists the possibility of ultimately having to decide whether a defendant should receive a sentence of death. To answer the prosecutor's questions candidly, the juror must anticipate fulfilling the role of a factfinder not only during the guilt phase but also during the penalty phase of the trial.
 
 
 12
 State v. Nefstad, 789 P.2d 1326, 1330 (Or.1990). The prosecutors were merely attempting to ferret out views on the death penalty. In United States v. Young, 470 U.S. at 11, the Supreme Court stated that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context." Viewed in the context of possibly reaching the penalty phase and having jurors face the difficult question of invoking the death penalty, the prosecutors' comments were not improper.
 
 
 13
 Nefstad also contends that his due process rights were violated by improper closing argument when the prosecutor asked the jury to compare a photograph of the victim before the murder with an autopsy photograph of the victim. Nefstad contends that this tactic improperly appealed to the jurors' emotions and was irrelevant. We disagree.
 
 
 14
 To prove its case, the prosecution had to establish that Nefstad acted intentionally when he murdered his victim. " 'The district judge is in a much better position to evaluate the prosecutor's conduct and its impact. This court properly accords considerable deference to the trial court's view of such matters.' " United States v. McChristian, 47 F.3d 1499, 1508 (9th Cir.1995) (quoting United States v. Sanchez-Rubles, 927 F.2d 1070, 1077 (9th Cir.1991)). We again agree with the Oregon Supreme Court when it stated:
 
 
 15
 The photographs of [the victim's] corpse show literally dozens of stab wounds, on his face and on virtually every other part of his body. These photographs [before and after] obviously were strong evidence that [the victim's] murder was committed by defendants with intent. [The victim's] condition while he still was alive in contrast to the condition of his corpse directly was relevant to remove any doubt from the minds of the jurors that defendant Nefstad acted with intent when he murdered [the victim].
 
 
 16
 Nefstad, 789 P.2d at 1350-51 (emphasis added). Because intent was an essential element of the crime, the trial court did not err in allowing the prosecutor to ask the jurors to compare before and after photographs of the victim.
 
 III.
 
 17
 Finally, we conclude that Nefstad failed to exhaust his remaining contentions. To satisfy the exhaustion requirement, Nefstad must have fairly presented his federal claim to the state courts. "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan v. Henry, 115 S.Ct. 887, 888 (1995) (per curiam) (emphasis added).
 
 
 18
 Nefstad did not inform the state courts that he was pursuing a federal due process claim either with respect to his two alleged state evidentiary error claims or his claim of error in the jury instructions. Mere citation of federal cases is insufficient to notify the state court that the petitioner is pursuing a federal due process claim. Furthermore, the state court gave no indication that it understood that Nefstad was pursuing a federal claim. To the contrary, the Oregon Supreme Court's analysis was confined to state law. See Nefstad, 789 P.2d at 1340-42, 1343-45, 1348-49.
 
 
 19
 AFFIRMED.
 
 
 
 *
 Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3